UNITED STATES of America,
Plaintiff-Appellant,

v.

The COMPOSITE STATE BOARD OF MEDICAL EXAMINERS, STATE OF GEORGIA, et al., Defendants-Appellees.

No. 80–7410.

United States Court of Appeals,
Fifth Circuit.
Unit B

Sept. 14, 1981.
Rehearing Denied Oct. 15, 1981.

Miller, Judge of the Court of Customs and Patent Appeals, sitting by designation, filed a dissenting opinion.

Leland Ware, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

John C. Jones, Asst. Atty. Gen., Atlanta, Ga., for defendants-appellees.

Before MILLER *, Judge, and FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

Seeking injunctive and declaratory relief, the United States Government brought this civil action against the Georgia Composite State Board of Medical Examiners,[1] its members, and the State of Georgia. Because some of the issues raised were pending in a state court action brought by the Composite Board against one of the Government's employees, the district court abstained. We reverse and remand for a determination on the merits.

In 1972 Congress established the National Health Service Corps [NHSC] for the primary purpose of alleviating severe inadequacies in the availability of professional health services in specific areas of the country. *See* 42 U.S.C.A. § 254d *et seq.* Under the supervision of the United States Public Health Services, the NHSC employs physicians and physician's assistants to provide health services in underserved areas of the country. Any public or non-profit entity located in a NHSC-designated medically underserved area may apply for the assignment of NHSC personnel. It has been the practice of the Public Health Service not to require NHSC physicians or physician's assistants to be licensed in the state in which they are assigned if they are licensed in some other state. The NHSC has engaged in the practice of allowing its physician's assistants to order routine medications.

In October 1976, at the request of the Brooks County Hospital Authority in Quitman, Georgia, the NHSC assigned one of its physicians, Dr. Norris Lewis, to Quitman. At the time of his assignment Dr. Lewis was licensed to practice medicine by the State of Georgia. Dr. Lewis' responsibilities as a NHSC physician included the supervision of the assigned paraprofessionals at the NHSC site.

Based upon the increasing patient load during the first year of Dr. Lewis' assignment, in October 1977, the Brooks County Hospital Authority requested that NHSC assign another physician to Quitman to assist Dr. Lewis. Unable to assign another physician to the Brooks County Hospital

---

* Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

1. The Composite Board is the legislatively created agency of the State of Georgia that is responsible for the licensing of physicians and other health professionals. Additionally, the Composite Board regulates the practice of medicine on behalf of the State of Georgia.

Authority at that time, NHSC agreed to and did assign a physician's assistant, Alan Armstrong. At the time of his assignment Mr. Armstrong was certified to provide health services as a physician's assistant in the State of New York, but he was not certified by the State of Georgia.[2] Prior to the time Mr. Armstrong began to perform his duties as a physician's assistant, Dr. Lewis and Mr. Armstrong inquired of NHSC whether Mr. Armstrong was required to be certified in Georgia; NHSC informed them that it was NHSC policy that physician's assistants need not be licensed in the state in which they serve if they are licensed by any state or certified by a National Board. Relying on this policy, Dr. Lewis and Mr. Armstrong entered into an agreement setting forth Mr. Armstrong's duties and responsibilities. The specified duties and responsibilities, which were consistent with Mr. Armstrong's position description, included the ordering of routine medications. Under the supervision of Dr. Lewis, Mr. Armstrong performed the duties and fulfilled the responsibilities, including the ordering of routine medications, that had been specified in the agreement.

On September 28, 1978, Dr. Lewis was notified by the Composite Board that a hearing would be held on November 14, 1978, to determine whether disciplinary action should be taken against him for permitting an unlicensed individual to practice medicine in violation of Georgia law. A hearing was held, and at this time Dr. Lewis apparently asserted that Mr. Armstrong had signed prescriptions without Lewis' knowledge or approval. On February 7, 1979, the Hearing Officer appointed by the Composite Board ruled that Dr. Lewis violated Georgia Code § 84–916(a)(10) by permitting Mr. Armstrong to practice as a physician's assistant without state certification and by allowing Mr. Armstrong to write prescriptions without his co-signature. The Hearing Officer recommended that Dr. Lewis be privately reprimanded.

The Composite Board declined to accept the Hearing Officer's recommendation and, on March 21, 1979, ruled that in addition to violating Georgia Code § 84–916(a)(10) Dr. Lewis violated Georgia Code § 84–916(a)(9) by knowingly aiding, assisting and advising Mr. Armstrong to practice medicine contrary to Georgia law and the Rules of the Composite Board. The Board suspended Dr. Lewis' license for six months and probated the entire suspension under the condition that Dr. Lewis comply with all provisions of Georgia law pertaining to the practice of medicine. If Dr. Lewis again implemented the working arrangement with Mr. Armstrong or another physician's assistant his license would be subject to suspension or revocation, and he would possibly be subject to indictment.

An appeal from the order of the Composite Board was filed in the Superior Court of Fulton County, Georgia, *Norris S. Lewis v. The Composite Board of Medical Examiners,* Civil Action No. C–51995, Superior Court of Fulton County. The United States of America and the Secretary of Health, Education and Welfare filed a motion to intervene as parties; the Composite Board resisted the motion and the motion was subsequently denied. The Georgia court, however, granted the United States and the Secretary *amicus curiae* status. The case has since been remanded to the Composite Board for further proceedings.

Alleging that it was threatened with irreparable harm and that it had no adequate remedy at law, the United States filed this action in federal district court against the State, the Composite Board, and Board members. The United States sought to enjoin defendants from suspending, continuing in effect any suspension, or enforcing any suspension of Dr. Lewis' license based upon his supervision of Alan Armstrong or any of his other actions taken in performance of his duties as a NHSC officer. The Government also sought an order declaring that the actions of Lewis in supervising

---

2. In the exercise of its authority, the NHSC encourages its assignees to apply for certification in the state in which they are assigned.

Accordingly, in June 1978, Mr. Armstrong applied for Georgia physician's assistant certification.

Alan Armstrong are in accordance with federal law, that the actions of the Composite Board against Dr. Lewis based upon his supervision of Alan Armstrong are in conflict with federal law and are null and void, and that defendants may not regulate or purport to regulate the activities of NHSC assignees in any manner inconsistent with the programs and policies of the United States Public Health Service or the NHSC.

■ Defendants filed a motion to dismiss, urging that the Anti-Injunction Act, 28 U.S.C.A. § 2283, precludes the granting of either declaratory or injunctive relief and that, in any event, the district court should abstain from rendering a decision since the action against Dr. Lewis was pending in state court. The district court correctly determined that the Anti-Injunction Act is inapplicable when the United States is the federal plaintiff, e. g., *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), and defendants do not challenge this determination on appeal. Even though the action was not barred by the Anti-Injunction Act, the court deemed abstention appropriate under the facts of the case.

■ The district court rested its decision to abstain[3] on the principles enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its

progeny, *see, e. g., Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). These cases teach that abstention is appropriate when "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, ... or collection of state taxes ...." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 816, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976) (citations omitted). On appeal the State adopts and urges the reasoning of the district court. On the other hand, the United States urges that abstention is always inappropriate when the United States is seeking to assert a superior federal interest. Alternatively, the United States argues that the facts of this case fall within an exception to *Younger* and thus abstention is inappropriate. We agree with the United States that abstention is inappropriate when, as here, the United States is seeking to assert a federal interest against a state interest. We also agree with the alternative contention of the United States.

■ It is abundantly clear that this action is not barred by the Anti-Injunction Act. *See, e. g., Leiter Minerals, Inc. v.*

---

**3.** As recently pointed out in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court has confined the circumstances appropriate for abstention to three general categories, one of which is described above. In the second category fall "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); *see, e. g., Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Finally, abstention is appropriate in cases concerning "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Cons. Dist. v. United States, supra*, 424 U.S. at 814, 96 S.Ct. at 1244; *see Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20

L.Ed.2d 835 (1968) (case concerned novel issue of water rights under state constitution); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (case concerned scope of the eminent domain power of municipalities under state law).

Even though abstention may be inappropriate, in rare cases the refusal of a federal court to hear a case properly within its jurisdiction may be justified by principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *see Colorado River Water Cons. Dist. v. United States, supra*, 424 U.S. at 817, 96 S.Ct. at 1246. An examination of the facts of this case clearly demonstrates that the action of the district court cannot be justified on this ground, and the State does not urge otherwise.

*United States, supra,* 352 U.S. at 225–26, 77 S.Ct. at 290–91. The United States urges that, for the same policy reasons that support the exception of the United States from the Anti-Injunction Act, abstention is inappropriate when the United States seeks to assert in federal court a superior federal interest.[4] Hence, a brief examination of the Act and the policy it advances is necessary for an evaluation of the position of the United States.[5]

The Anti-Injunction Act provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Whether the Act applies to actions brought by the United States was addressed by the Supreme Court in *Leiter Minerals, Inc. v. United States, supra,* 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. In *Leiter Minerals* defendant filed suit in a Louisiana court against mineral lessees of the United States. Defendant sought to have itself declared owner of the mineral rights of the land leased from the United States. The lessees argued in Louisiana court that the United States, as lessor, was an indispensable party, but the court overruled this objection. Joining all interested parties, the United States brought suit to quiet title in federal district court. The United States also sought and obtained an injunction to restrain the Louisiana proceeding. The Fifth Circuit affirmed, as did the Supreme Court.

Before the Supreme Court, defendant argued that the Anti-Injunction Act barred the injunction. The Court disagreed, explaining that the Act

> is designed to prevent conflict between federal and state courts. This policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest. The frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be ... great ....

*Leiter Minerals, Inc. v. United States, supra,* 352 U.S. at 225–26, 77 S.Ct. at 290–91. The Court therefore concluded that the Anti-Injunction Act did not apply to actions brought by the United States to enjoin state proceedings. *See NLRB v. Nash-Finch Co.,* 404 U.S. 138, 92 S.Ct. 373, 30 L.Ed.2d 328 (1971).

The policies underlying the abstention doctrine are similar to those underlying the

---

4. The State argues that there is no superior federal interest, apparently reasoning that both the State and the United States seek to protect the health of the citizens of Georgia. But even if the State and the United States share the same general goal, their means for obtaining the goal differ, and these varying means produce different interests. Weighing the interest of the State and the interest of the United States, the district court concluded that "[t]he federal interest in providing unhindered health services to medically underserved areas is also important, but the court is unable to say that the government has a superior federal interest." This reasoning ignores the Supremacy Clause of our Constitution. Regardless of a court's view of the relative importance of the conflicting interests, any state law that frustrates or conflicts with the lawful objective of a federal statute must yield to the federal authority. *E. g., Sperry v. Florida ex rel. Florida Bar,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) (A state may not enforce licensing requirements that, though valid in the absence of federal regulation, give the state's licensing board a virtual power of review over the federal determination that a person is qualified to perform certain functions.); *Gibbons v. Ogden,* 9 Wheat. 1, 211, 6 L.Ed. 23 (1824).

5. We recognize that the Sixth Circuit has held that "[a]bstention from exercise of federal jurisdiction is not improper simply because the United States is the party seeking the federal forum." *United States v. Ohio,* 614 F.2d 101, 104 (6th Cir. 1979). For the reasons expressed in the text of this opinion we do not find the reasoning of the Sixth Circuit persuasive. Furthermore, we think that the instant case is distinguishable from the situation in *United States v. Ohio* because, as the Sixth Circuit pointed out, the United States could intervene in the state proceeding. In the instant case, the United States sought to intervene in the state proceeding, the State of Georgia resisted such intervention, and the state court disallowed it.

Anti-Injunction Act. Whether it is labeled "comity", "federalism", or some other term, it is the unnecessary conflict between state and federal governments that is sought to be avoided. Although in operation the abstention doctrine and the Anti-Injunction Act might seem to be addressed only to the conflict between the state and federal judicial systems, those concepts of comity or federalism that support the Anti-Injunction Act and the abstention doctrine apply to conflicts not only between the judicial systems, but also between the other branches of the respective governments. The concepts of comity and federalism embody a "proper respect for state functions," a "sensitivity to the legitimate interests of both State and National Governments," and a "continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris, supra,* 401 U.S. at 44, 91 S.Ct. at 750. As pointed out by the Supreme Court in *Leiter Minerals,* the policy of avoiding conflicts between the state and federal courts is more compelling in the case of private litigants. This is so because, in the absence of intervention by the federal courts, the two governments would not be in direct conflict. In the usual case involving only private litigants, the defendant in the state court is seeking to assert a federal right as a defense against an action in the state courts. Although the federal government has an interest in the outcome of the action to the extent that a federal right is implicated, the state and federal governments are not in direct conflict. On the other hand, in a case in which the United States seeks relief against a state or its agency, the state and federal governments are in direct conflict before they arrive at the federal courthouse. By the time the United States brings suit in federal court against a state, any attempt to avoid a federal-state conflict would be futile. Thus, in most cases invocation of either the Anti-Injunction Act

or the abstention doctrine, both of which have as their goal the avoidance of federal-state conflicts, would be useless. In other words, by the time federal jurisdiction is invoked the issue has ceased to be one of avoidance of a federal-state conflict; the issue has become one of choosing the proper forum for resolution of the existing conflict. Viewed in this light, we think in this case the answer is clear.[6] "For the Federal Government and its agencies, the federal courts are the forum of choice. For them, . . . access to the federal courts is 'preferable in the context of healthy federal-state relations.'" *NLRB v. Nash-Finch Co., supra,* 404 U.S. at 147, 92 S.Ct. at 379 (*quoting Leiter Minerals, Inc. v. United States, supra,* 352 U.S. at 226, 77 S.Ct. at 291); *see First Federal Savings & Loan Ass'n of Boston v. Greenwald,* 591 F.2d 417, 424 (1st Cir. 1979) ("The policy underlying [the exception of the United States] to the Anti-Injunction Act applies as well, and indeed with greater force, to make abstention under general equitable principles inappropriate where a federal agency is asserting 'superior federal interests.'"); *United States v. State Tax Commission,* 481 F.2d 963 (1st Cir. 1973) (United States not precluded from challenging validity of state tax in federal court even though individuals are usually barred from making such challenges). Accordingly, we hold that abstention is inappropriate when, as here, the United States seeks in federal court to assert its federal interests against a state, at least in the absence of *compelling* circumstances indicating that the state court is much more qualified to hear the case.

In its brief and at oral argument the State of Georgia extensively argued that abstention is mandated by the *Younger* doctrine. In light of the State's insistence, we think it appropriate to explain why we do not find its argument persuasive. The answer, we think, is obvious. If, as we decided above, the principles underlying the abstention doctrine are inapplicable in this

---

6. We observe, however, that in some cases, such as a case involving a complex issue of unclear state law, an argument might be advanced that the state court is the more appropriate forum. We express no opinion on the merit of such an argument in the proper case.

case, *a fortiori* the principles underlying the *Younger* branch of the abstention doctrine are inapplicable.

For purposes of our discussion it is necessary to make clear exactly what the United States is seeking. The United States seeks injunctive and declaratory relief in connection with the state action against Dr. Lewis. Additionally, the United States seeks declaratory relief in connection with its other employees who are not the subject of pending actions in state court. We will first examine the abstention doctrine as it relates to the United States' claims concerning its employees who are not the subject of actions in the state court.

█ *Younger v. Harris, supra,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, and its progeny stand for the proposition that in the absence of compelling circumstances a federal district court should not enjoin a pending state criminal (or in some cases quasi-criminal) proceeding;[7] neither should a federal court grant to a state defendant declaratory judgment holding unconstitutional the authority under which the state defendant is being prosecuted. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). But nowhere in the *Younger* line of cases is it even intimated that, while a state prosecution is pending, a federal court, in an appropriate case between persons not parties to the state action, may not address issues of federal law that are simultaneously being litigated in state court. Rather, as this Court recently pointed out in *Robinson v. Stovall,* 646 F.2d 1087, 1090 (5th Cir. 1981), a "plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else (whether or not the state defendant is a litigant in a federal action)." *See e. g., Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Generally speaking, abstention bars prospective relief to a person not a party to the state action only in the extraordinary situation in which the interests of the state defendant and the federal plaintiff are so "intertwined" as to be considered identical. But neither a mere "common interest in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs." *Robinson v. Stovall, supra,* 646 F.2d at 1091. In the instant case the interest of the United States in providing health care to underserved areas in the manner which it deems best is much broader than the interest of Dr. Lewis in maintaining his license. Accordingly, we find that the interests of the United States and Dr. Lewis are not so "intertwined" as to be considered one for *Younger* purposes. We observe, however, that even if the interests were deemed to be intertwined, "courts have not hesitated to reject an 'intertwining' theory, even in cases involving co-employees or employees and employers . . . ," when the crucial element of availability of intervention in the state proceedings is absent. *Id.* at 1092. This is so because if the federal plaintiff is precluded from intervening in state court the only way the federal plaintiff could exploit the pending state prosecution to its benefit would be to seek to exercise undue influence over the defense of the state defendant. *Id.* at 1093. In the instant case, if the federal court abstained, to obtain certain review in the state court the United States would have to exercise undue influence to urge Dr. Lewis to abandon his non-Supremacy Clause defense and to rely solely on the Supremacy defense.

From the above it is clear that the *Younger* doctrine is inapplicable to the United States' claim for declaratory relief "[t]hat defendants may not regulate or purport to regulate the activities of NHSC assignees in any manner inconsistent with the programs and policies of the United States Public Health Service and/or the National Health Service Corps . . . ." We now address the *Younger* doctrine as it applies to the claim of the United States for

---

7. We assume without deciding that a disciplinary action against a physician is a proceeding in which the *Younger* doctrine might be applicable. *See Gibson v. Berryhill,* 411 U.S. 564, 576, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).

injunctive and declaratory relief relating to the actions of Dr. Lewis.

To support its position that abstention is appropriate, the State relies on *Duke v. Texas*, 477 F.2d 244 (5th Cir. 1973). In *Duke* this Court explained that in order to overcome *Younger* principles,

> two express pre-conditions must be shown before relief may be granted to a federal plaintiff. First, the moving party must demonstrate that he will suffer irreparable injury if the federal court stays its hand, and second the moving party must demonstrate that he does not have an adequate remedy at law in the state courts, [*Younger v. Harris*] 401 U.S. at 43–44, 91 S.Ct. at 750, 27 L.Ed. at 675.

*Duke v. Texas, supra*, 477 F.2d at 248. The State urges that the United States has satisfied neither of these pre-conditions.[8]

■ As pointed out by the State of Georgia, mere inconvenience is not irreparable injury; irreparable injury, at least in the context of abstention, must usually be "great and immediate." *See Younger v. Harris, supra*, 401 U.S. at 46, 91 S.Ct. at 751. The State urges that the United States will not suffer such irreparable injury if the district court stays its hand. But if the district court abstains, the United States will be forced to await a ruling from the state court—a ruling that could restore Dr. Lewis' license without reaching the Supremacy Clause issue. During this time the United States will be forced to alter its policies in the State of Georgia or risk having its employees who are assigned within Georgia be subject to disciplinary action by the State. In some cases, this could mean a decrease in the quality or availability of health care services provided to already un-

derserved areas. In light of the express desire of Congress to provide these health care services and in light of the important and fundamental nature of these services, we think that if the federal court abstains the United States and the programs it seeks to advance will suffer irreparable injury, as that term is used in the context of abstention.

■ We think it similarly clear that the United States has no adequate remedy at law. The United States moved to intervene in the state court proceeding. The State of Georgia resisted the motion and the motion was denied by the Georgia court. The United States, however, was granted *amicus curiae* status. Having successfully precluded the United States from intervening as a party in the action in its courts, the State of Georgia cannot seriously urge that the United States has an adequate remedy at law.

The cause is REVERSED and REMANDED for a determination on the merits.

MILLER, Judge, dissenting.

In its complaint before the court below, the United States alleged that it was threatened with irreparable harm and that it had no adequate remedy at law. However, the only threatened harm is, as pointed out in the majority opinion, that the United States, pending a ruling by the state court, must either alter its policies in the State of Georgia or risk having its employees who are assigned within Georgia subjected to state disciplinary action. The majority opinion speculates that in some cases this could mean a decrease in the quality or availability of health care services provided to already underserved areas.

---

8. The State of Georgia has gone to some length to argue that the actions of the employees of the United States were in violation of federal law. However, none of the cited authority supports the position of the State, at least on the record as it now exists. *See* 21 U.S.C.A. § 822 (requiring registration of one who dispenses controlled substances); 42 U.S.C.A. § 1395 x(aa)(3)(social security statute requiring that physician's assistants be licensed by the state in which they practice for the purposes of rural health clinic services). To the contrary, it appears that the actions of the State of Georgia

are in violation of Georgia law. *See* Ga. Code Ann. § 84–906(b)(4) (providing that nothing in the chapter under which Dr. Lewis was charged shall be construed to prohibit the "performance of their duties for the Federal Government by Federal physicians, both military and civilian"). Although these arguments are more relevant to the merits of this case than to the abstention problem, the state action against Dr. Lewis in the face of a state statute that appears to preclude such an action may indicate a lack of good faith on behalf of the State of Georgia.

According to the district court, the Composite State Board of Medical Examiners essentially found that Dr. Lewis violated Georgia law by allowing Mr. Armstrong to write prescriptions without his cosignature. Apparently Mr. Armstrong could have written such prescriptions without Dr. Lewis' co-signature if he had been certified as a physician's assistant by the State of Georgia.

Thus, it appears that, pending a ruling by the state court, Dr. Lewis would be required to cosign all prescriptions written by Mr. Armstrong, apparently at Dr. Lewis' direction.

I am not persuaded that such a requirement satisfies the test of "irreparable injury," laid down in *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971), and echoed by this court in *Duke v. State of Texas*, 477 F.2d 244, 248 (1973). Also, I believe the admonition by the *Younger* court (*id.* 401 U.S. at 45, 91 S.Ct. at 751) "that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions" tips the scales in support of abstention where the showing of irreparable injury is unclear.