**UNITED STATES of America, Plaintiff,**

**v.**

**STATE OF CALIFORNIA; John K. Van de Kamp, Attorney General of the State of California, Defendants.**

**AIRCAL INC., a Delaware corporation, Plaintiff,**

**v.**

**John K. VAN de KAMP, Attorney General of the State of California; the City of South Lake Tahoe, Defendants.**

Civ. Nos. S–85–1600 EJG, S–85–1606 EJG.

United States District Court, E.D. California.

April 1, 1986.

Catherine J. Lanctot, for U.S. and Federal Aviation Admin. (FAA).

Kenneth Williams, for State of Cal.

Alexander Wiles and Richard Sherman, Jr., Los Angeles, Cal., for plaintiff Air Cal.

Michael S. Gatzke, Carlsbad, Cal., for defendant City of South Lake Tahoe.

## MEMORANDUM OF DECISION AND ORDER

EDWARD J. GARCIA, District Judge.

These two related actions came before the court on March 7, 1986, pursuant to the plaintiffs' motions for summary judgment in both cases. The actions were also before the court on defendant State of California's motion for judgment on the pleadings as to both cases and on California's request to realign the City of South Lake Tahoe from a party defendant to a party plaintiff in Civil Action No. 85–1606.

The court indicated at oral argument that the issues raised in these two cases are so similar that they could be more efficiently handled as consolidated actions. Counsel for all parties in both cases stated that they have no objection to such consolidation. Accordingly, these two actions are hereby ordered consolidated pursuant to Rule 42(a) Fed.R.Civ.P.

In each of these two cases the federal government and Air Cal, Inc., have filed virtually identical complaints against the State of California and its Attorney Gener-

al, with Air Cal's complaint adding the City of South Lake Tahoe as a party defendant. Both complaints seek declaratory and injunctive relief that, in effect, would nullify a California Superior Court decision and enforcement order which is now on appeal to the California Third District Court of Appeal. Plaintiffs contend that the state court issued an order that intrudes into an area preempted by federal law and that this court should therefore enjoin enforcement of that order.[1] California not only disputes the preemption question, but also raises a fundamental and threshold issue of abstention. In essence, California asserts that its courts including the California District Court of Appeal, where the case is now pending, are well qualified, and indeed obliged, to interpret and enforce the federal constitution and statutes.

### The State Court Action

The lawsuit in state court involves a dispute between the State of California and the City of South Lake Tahoe (City) and Air Cal as to whether the latter two parties must comply with the California Environmental Quality Act (CEQA) before increasing Air Cal's commercial flight service to the South Lake Tahoe Airport from 19 to 29 flights per week. Upon a petition for a writ of mandate filed by the State of California the Sacramento County Superior Court ruled that the City and Air Cal were required to comply with CEQA and directed Air Cal to discontinue all flights into the South Lake Tahoe Airport pending the preparation of an Environmental Impact statement. Air Cal and the City appealed that order to the Third District Court of Appeals. Pending that appeal Air Cal and the city have continued their previously existing air service to the South Lake Tahoe Airport. Although the parties disagree as to whether the appeal to the California Third District Court of Appeals has resulted in an automatic stay of the Superior Court order, the State of California has agreed not to pursue enforcement of the Superior Court order pending such appeal.

The instant complaints ask this court to declare that the provisions of CEQA relied on by the state court are in conflict with and therefore preempted by federal law, and to enjoin the California Attorney General from taking any action to enforce the state court's writ of mandate directing the City of South Lake Tahoe to discontinue Air Cal flights into the South Lake Tahoe Airport. Air Cal's complaint further requests the court to enjoin the City from complying with the state court decision. Plaintiffs have moved for summary judgment pursuant to Rule 56 of the Fed.R.Civ.P. California has filed a cross motion for a judgment of dismissal on the pleadings pursuant to Rule 12(c). Plaintiffs have pointed out that California's cross motion is based, in part, on materials outside the pleadings which therefore require that the motion be treated as one for summary judgment under the provisions of Rule 56. Because California's affidavits and exhibits are being considered for this motion, the motion is being so treated. Rule 12(c) requires that all parties be given reasonable opportunity to present evidence pertinent to such a Rule 56 type of motion. However, plaintiffs have not requested and the court finds no need for a continuance for the purposes of presenting such evidence. Both plaintiffs have previously submitted documentary evidence in the form of exhibits and affidavits in support of their own Rule 56 motions. Accordingly, California's motion for a judgment on the pleadings is being considered as one made pursuant to Rule 56.

The plaintiffs' motions for summary judgment raise the question of whether or not application of CEQA in the state court proceedings is preempted by federal law. California's motion for judgment on the pleadings asserts the doctrine of abstention, and, if granted, will preclude this court from reaching the preemption issues. For that reason the question of abstention will be dealt with first. However, some overview of the preemption issues will be

---

**1.** Apparently by stipulation, the order is not     being enforced pending appeal in state court.

needed to bring the abstention question into focus.

### Preemption

The City of South Lake Tahoe, Air Cal and the United States claim, in both the state proceedings and the instant actions before this court, that the particular remedy ordered by the state court is violative of federal law which reserves for the federal government complete and exclusive sovereignty over the airspace of the United States. Section 1108(a) of the Federal Aviation Act (49 U.S.C. § 1508(a)).[2] The gist of plaintiffs' preemption argument is that *City of Burbank v. Lockheed Air Terminal*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973) and *San Diego Unified Port District v. Gianturco*, 651 F.2d 1306 (9th Cir.1981) are dispositive of this matter. Those cases generally held that Congress has preempted local regulation or control of the source of aircraft noise. Additionally, plaintiffs rely on the Airline Deregulation Act of 1978 (49 U.S.C. § 1301 *et seq.*) [ADA]. The ADA, which resulted in the ultimate dissolution of the Civil Aeronautics Board and the end to federal regulation of airline rates, routes and services, provides that no state may step in and occupy the area of regulation just vacated by the now defunct federal board.[3] Plaintiffs assert that the order issued by the Sacramento Superior Court on October 2, 1985 would stop all Air Cal flights into South Lake Tahoe until such time as the City is in compliance with CEQA. Therefore, it is argued, the order necessarily interferes with interstate commerce and is preempted by the ADA which prohibits the states from regulating "rates, routes, and services".

California responds that the Ninth Circuit in *Gianturco, supra,* found that the ADA is not directly applicable because of its economic objectives. *Id.* footnote 15 at 1313. California further argues that the Ninth Circuit considered the general question of noise regulation in light of the Supreme Court's holding in *City of Burbank* and concluded that not all state or local noise abatement laws are preempted. Specifically, *Gianturco* stated that:

> As we read City of Burbank, Congress has preempted only local regulation of the source of aircraft noise. Local governments may adopt abatement plans that do not impinge on aircraft operations. See *Air Transp. Ass'n of America v. Crotti*, 389 F.Supp. 58, 64–65 (N.D. Cal.1975) (three-judge court) (erection of noise abatement structures and monitoring of aviation noise are permissible).

> The *City of Burbank* court spoke only of noise "control" preemption, ... not preemption of the entire field of aviation noise abatement....

> This interpretation of *City of Burbank* is consistent with its underlying rationale. The Court acknowledged that "[c]ontrol of noise is of course deep-seated in the police power of the states," ... but recognized that effective control of aircraft source noise is presumptively a subject for uniform federal regulation.... See also *National Aviation v. City of Hayward*, 418 F.Supp. 417, 425 n. 13 (N.D.Ca.1976)." (*Id.*, at 1314)

California contends that because state and local abatement plans which do not impinge on aircraft operations are permissible under *Gianturco*, federal law does not prohibit the state's use of CEQA from temporarily delaying the Air Cal project for a reasonable period of time during which appropriate studies would be conducted as required by state law. California notes that such delays were permitted in a somewhat different context in *Midway Airline v. County of Westchester*, 584 F.Supp. 436 (S.D.N.Y.1984) and *British Airways Board v. Port Authority of New York*, 558 F.2d 75 (2nd Cir.1977).

---

**2.** The FAA notes that it has been authorized pursuant to 49 U.S.C. § 1348 to develop plans and formulate policy to insure safe and efficient use of airspace.

**3.** It is apparently because the CAB is no longer in business that the FAA is the federal agency now suing on behalf of the U.S.

Regarding the Federal Aviation Act, California argues that the CAB, FAA and EPA all had overlapping obligations under federal law regarding the navigable airspace which included the regulation of commerce, safety and environmental impact, respectively. 49 U.S.C. § 1348 and 1431 and 42 U.S.C. § 4906. It is argued that with the dissolution of the CAB Congress' stated policy in the Act regarding other available remedies did not change. That policy included the statement that "nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506.

### Abstention

Having noted the respective preemption arguments, it must now be determined whether it is appropriate for this court to step in and take the issue away from and effectively enjoin the ongoing state court appeal. There can be no doubt that the relief here requested by Air Cal and the United States is extraordinary. Both plaintiffs seek from this court an order permanently enjoining the Attorney General of the State of California from taking any action to enforce any existing Superior Court order issued pursuant to CEQA which precludes or limits aircraft operations at the South Lake Tahoe Airport. (Complaint of United States, second prayer for relief). Plaintiffs further request an order prohibiting the Attorney General from taking any action to enforce any judicially imposed sanctions for violations of such an order or from pursuing or initiating any state court action under CEQA for the purposes of imposing a limit on the number of aircraft operations at the South Lake Tahoe Airport. Additionally, plaintiffs request this court to enter a permanent injunction prohibiting the City of South Lake Tahoe from discontinuing or refusing to increase Air Cal flights at the South Lake Tahoe Airport as a result of

any state court order issued pursuant to CEQA or any other state law. (Air Cal complaint, third prayer for relief).

Not only is the relief sought extraordinary, but the evidence submitted by California shows that both plaintiffs have had, and continue to have, an opportunity to litigate in the state court proceeding the same preemption question now being raised here. Air Cal and the City of South Lake Tahoe are parties to the state court action and will soon be presenting oral arguments on the preemption issue to the State Court of Appeals.[4] Furthermore, Air Cal and the City of South Lake Tahoe entered into a written stipulation at the outset of the state court litigation agreeing not to remove that case to federal court. As for the United States, the Williams affidavit submitted by California shows that the FAA was aware of the state court litigation some nine months before the Superior Court judge issued his ruling. As early as January 18, 1985, an attorney for FAA contacted the Attorney General's Office concerning another federal lawsuit involving the South Lake Tahoe Airport and was fully advised at that time of the ongoing state court action that the FAA now wants to enjoin. On January 23, 1985, an attorney for the U.S. Department of Justice also contacted the California Attorney General's Office on behalf of the FAA and was again fully advised of the pending state court litigation. Both of those attorneys advised the California Attorney General that they had no interest in the state court CEQA litigation concerning the South Lake Tahoe Airport.

Furthermore, on November 7, 1985 the California Attorney General wrote to the U.S. Department of Justice and invited the FAA to intervene in the pending state court litigation and to present their views concerning the preemption question as it pertains to CEQA. In spite of those opportunities, the U.S. chose not to intervene.

---

**4.** The parties indicated at oral argument in the instant action that briefing in the State Court of

Appeal matter is now complete.

California argues that on such a record this court should not interrupt the continuation of the state court proceedings. It relies on the Anti-Injunction Statute and various theories of the Doctrine of Abstention.

### Anti-Injunction Act

28 U.S.C. § 2283, on its face, seems to prohibit federal courts from staying state court proceedings absent express authorization from Congress or under circumstances where such action appears necessary to aid the federal court's jurisdiction or to protect and enforce its judgments. However, when the United States seeks to enjoin enforcement of state court orders that frustrate a "superior federal interest" the Anti-Injunction Act is not applicable. *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957). California disputes whether the FAA's position in this case can accurately constitute a "superior federal interest" for the purposes of applying the *Leiter Minerals* exception. Specifically, California notes that the FAA's position in this case (i.e. one supportive of Air Cal's interest in increasing flights without compliance with state law under CEQA) cannot be reconciled with its prior contentions. In an earlier state court proceeding of *CTRPA v. Public Utilities Commission*, 25 Cal.3d 540, 159 Cal. Rptr. 190, 601 P.2d 206 (1979), the FAA submitted an amicus brief calling for the enforcement of CEQA and, pending an environmental impact report, the annulment of a Public Utilities Commission decision which had authorized Air Cal and PSA flights to the South Lake Tahoe Airport. The FAA's current contentions here are also at odds with the positions of the U.S. Departments of Interior and Agriculture which were cited by the FAA in the above-mentioned amicus brief and argued as being supportive of CEQA enforcement at the airport. Additionally, there appears to be some conflict with the FAA's stated position here and the position of the U.S. Congress which stressed the "federal and national interest in protection of the environment of the Lake Tahoe Basin" when it approved the Lake Tahoe Compact (House Report No. 650, 91st Congress, 1st Session (1969) pages 2 and 3, also cited in the FAA's previously mentioned amicus brief). In view of the federal government's previously stated positions California questions whether the FAA's position in this case constitutes the definitive "superior federal interest" that should give rise to the *Leiter Minerals* implied exception to the Anti-Injunction Act. However, if the FAA's assertion that its current position constitutes the "superior federal interest" is accepted at face value (and indeed the FAA is entitled to some deference on this point) the analysis does not end with the Anti-Injunction Act. Although the Anti-Injunction Act would not apply in this case, it still would remain to be determined whether fundamental principles of comity and federalism that underly the several theories of abstention should require this court to stay its own hand rather than interrupting the ongoing state court proceedings.

### Younger Abstention

In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) the Supreme Court explained "the reasons why it has been perfectly natural for our cases to repeat time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state court is not to issue such injunctions." *Id.* at 46, 91 S.Ct. at 751. Those reasons were explained as follows:

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our

Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism" born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future. *Id.*

Although *Younger* involved a state criminal proceeding, the Supreme Court has specifically held that the principles of *Younger* are broad enough to apply to interference by a federal court with an ongoing civil enforcement action brought by a state in its sovereign capacity. *Trainor v. Hernandez*, 431 U.S. 434 at 445, 97 S.Ct. 1911 at 1919, 52 L.Ed.2d 486 (1977). In *Trainor,* the Court noted that other forms of abstention, particularly *Pullman* and *Burford* abstention, have not traditionally distinguished between civil or criminal proceedings in the state courts. *Id.* footnote 8. In *Middlesex County Ethics Committee v. Garden*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) the Supreme Court again reaffirmed that "the policies underlying *Younger* are fully applicable to non-criminal judicial proceedings when important state interests are involved." *Id.* at 433, 102 S.Ct. at 2522. Citing *Moore v. Simms,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979) and *Huffman v. Pursue Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). The court in *Mid-*

*dlesex* held that the relevant inquiry is threefold. First, it must be determined whether plaintiffs seek to enjoin an ongoing state proceeding. Second, it must be determined whether the proceedings implicate important state interests. Finally, it must be determined whether the plaintiffs have an adequate opportunity in the state proceedings to raise the constitutional challenges. In the instant case, there can be no doubt that the plaintiffs, in fact, are seeking to enjoin an ongoing state judicial proceeding. The fact that plaintiffs have named the California Attorney General as the subject of their requested injunction rather than the state court itself does not alter that conclusion. Plaintiffs complaints seek to enjoin any enforcement of the state trial court's order which is currently pending review before the State Court of Appeals.

It is equally clear that the proceeding before the California Third District Court of Appeals as well as the one before California Superior Court implicate important state interests in at least two ways. First, California has a fundamental interest in enforcing its Environmental Quality Act. The FAA has previously admitted the importance of that interest in its amicus brief submitted in the state court action of *CTRPA v. Public Utilities Commission, supra.* As previously noted, that brief urged the vigorous enforcement of CEQA in a manner that would have temporarily halted airflight service by Air Cal and PSA to the South Lake Tahoe Airport. Similarly, Air Cal has also acknowledged the state's important interest in CEQA enforcement in a separate action *Air Cal v. Orange County,* Orange County Superior Court No. 38-28-00. A copy of Air Cal's complaint in that action shows that Air Cal called for enforcement of CEQA in the form of an injunction against the flights of its competitors. Secondly, California has an important and fundamental interest in the efficient operation of its state court system. The record in this case shows that the state court action has been pending for two years and is currently before the State

Court of Appeal. Air Cal is a party to that state action and the FAA has been aware of that litigation for some time and chose not to participate. Preparation of the trial record and the briefing on appeal have now been completed. The plaintiffs herein acknowledge that the issue of federal preemption has been litigated and is currently being argued on appeal. For this court to now interfere with that appeal in the manner here requested would result in a serious interference with the fundamental operation of the state court system.

Finally, the third factor set forth in *Middlesex County* also clearly weighs in favor of abstention. The FAA was invited to participate in the state court action for the purpose of litigating the constitutional question of preemption. That it chose not to, does not establish that there is no adequate opportunity in the state court proceeding to raise the constitutional challenges. As for Air Cal, it has raised those challenges and they are currently being considered by the California Court of Appeals.

The United States relies on *United States v. Composite Board of Examiners*, 656 F.2d 131 (5th Cir.1981) and argues that *Younger* abstention is never applicable when the United States seeks to assert a federal interest. The Fifth Circuit has so held with respect to the Anti-Injunction Act, but its holding is somewhat equivocal with respect to *Younger* abstention. That case involved a state proceeding to revoke a physician's medical license. The physician was an employee of the United States and was being disciplined by the state for acts performed in the scope of his employment and pursuant to federal policy. The United States sought to intervene in that action, but such intervention was opposed by the state of Georgia and refused by the Georgia state court. The Fifth Circuit not-

ed that there are two necessary requirements to overcome *Younger* abstention. It held that the federal plaintiff must first demonstrate that irreparable injury will occur if the federal court stays its hand, and second, that there is no adequate remedy in the state courts. In *Composite Board of Examiners*, the United States had no available remedy in the state courts because of the denial of intervention. In the instant case, the State of California invited the United States to intervene, but the United States declined. Moreover, California in this case is not attempting to penalize a federal employee for acts done pursuant to the policy of his federal employer. Therefore, it appears that the facts in *Composite Board of Examiners* are too dissimilar to this case to be of assistance. Furthermore, other jurisdictions have held that an interference of the state court proceeding is not "automatically granted simply on the application of the United States ... It is also necessary to inquire 'whether the granting of an injunction is proper in the circumstances of this case.'" *United States v. Certified Industries*, 361 F.2d 857, 859 (2nd Cir.1966), citing *Leiter Minerals, Inc. v. United States*, 352 U.S. at 226, 77 S.Ct. at 291 (1957).[5]

Air Cal relies on a recent refusal by the Ninth Circuit to apply the doctrine of *Younger* abstention in a case involving several appeals from orders by the California Agricultural Labor Relations Board. That case, *Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349 (9th Cir. 1986), involved a preemption challenge to an ALRB award of back pay to farm workers. Although some of the appeals were pending before the California District Court of Appeals, the Ninth Circuit rejected the ALRB's abstention arguments and resolved the preemption question. The court held that the so-called "make-whole"

---

**5.** Likewise, this court finds the FAA's reliance on *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 141, 92 S.Ct. 373, 375, 30 L.Ed.2d 328 (1971) misplaced. That case, as in *Leiter Minerals*, held only that the presence of the United States may give rise to an implied exception to the Anti-Injunction Act. It did not hold that a stay of the state court's proceeding should be automatically granted upon the application of the United States. Nor did it hold that the presence of the United States as a plaintiff excuses application of the *Younger*, *Pullman* or *Burford* abstention doctrines.

backpay awards were not preempted by federal law, i.e. ERISA. In its abstention analysis, the court found that it was possible to reach the preemption question without interfering with the fundamental operation of the state's court system. However, as previously noted, this case implicates both the important state interest of enforcement of CEQA and the fundamental operation of the California court system. Although the court in *Martori Bros.* found that the employers' petitions for review of ALRB orders that were before the California Court of Appeal did not involve the fundamental operation of California's court system, the same cannot be said of this case. Here, unlike *Martori Bros.*, plaintiffs request this court to enjoin the California Attorney General from enforcing an important state environmental statute. Furthermore, plaintiffs here, unlike those in *Martori Bros.*, request this court to enjoin the California Attorney General from taking any action to impose or enforce judicially imposed sanctions for the violation of the state court decision or a writ of mandate. Additionally, the injunctive relief requested here would permanently enjoin the City of South Lake Tahoe from decreasing or refusing to increase flights in compliance with "any state court order issued pursuant to CEQA or any other state law." (Air Cal Complaint, third prayer for relief). There can be no question that if such relief were granted it would seriously interrupt the fundamental operation of California's court system without any showing as to why that system should not be allowed to proceed in its ordinary course.

On the state of the record presented in this case, this court must heed the admonitions of the Supreme Court in *Younger* (which were reaffirmed and extended to certain civil proceedings in *Middlesex Ethics Committee* and *Trainor* ) that "the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Younger v. Harris, supra* 401 U.S. at 46, 91 S.Ct. at 751.

*Pullman Abstention*

Although abstention is required on the strength of *Younger, Trainer* and *Middlesex County*, the somewhat different doctrine of abstention announced in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) also appears applicable. *Pullman* abstention is appropriate where a federal constitutional issue might be mooted or presented in a different posture by a state court determination of pertinent state law. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The Ninth Circuit has set forth a three-part test for applying the *Pullman* doctrine. Abstention is warranted if: 1) the complaint touches a sensitive area of social policy upon which federal courts are not to enter unless no alternative to its adjudication is open; 2) such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy; 3) the possibly determinative issue of state law is doubtful. *Canton v. Spokane School District No. 81,* 498 F.2d 840; and *Intern. Bro. of Elec. Wkrs. v. Public Ser. Comm'n,* 614 F.2d 206 (1980). Here, the state court's resolution of the various disputed issues pertaining to CEQA could easily alter or even moot the constitutional issues that plaintiffs now want decided in this court. Moreover, the state's enforcement of its environmental laws like the state's regulation of its public utilities in *Intern. Bro. of Elec. Wkrs. Id.* is a sensitive area of social policy into which a federal court should not intrude unnecessarily. Finally, it appears that the third prong is met. On this record it cannot be said that the state superior court's writ of mandate ordering compliance with CEQA was unreasonable or inappropriate under applicable state law. The non-constitutional CEQA issues are at least unclear enough that plaintiffs are in disagreement with the state trial court and the California Attorney General and they are pursuing their appeal on those issues as well as the pre-

emption question.[6] Thus, under the circumstances of this case, *Pullman* abstention also appears appropriate. Moreover, even in the absence of specific abstention doctrines such as *Younger* and *Pullman*, the court notes that traditional principles of comity and the need to avoid duplicative litigation over the same issues cautions strongly in favor of this court's staying its own hand in deference to the state court's completion of their proceedings. *Colorado River Water Conservation District v. United States, supra* 424 U.S. at pages 817 to 820, 96 S.Ct. at pages 1246 to 1247.

### Burford Abstention

Having decided that both the *Younger* and *Pullman* abstention doctrines compel abstention in this case, the court does not reach the question of *Burford* abstention.

### Conclusion

For the above stated reasons, it is hereby ordered that:

1. Civil actions 85–1600 EJG and 85–1606 EJG are consolidated;

2. Defendant California's motion for judgment of dismissal on the pleadings which is herein treated as a motion for summary judgment under Rule 56 is granted;

3. Defendant California's request to realign the defendant City of South Lake Tahoe as a party plaintiff is moot; and

4. Plaintiff's motions for summary judgment are now moot.

IT IS SO ORDERED.

---

**6.** Although plaintiffs urge this court to assume that the state law issues are resolved and that CEQA was violated and that the state court writ of mandate was appropriate under CEQA for the purposes of resolving this motion, the undisputed facts before the court are otherwise. Those issues are not resolved and they remain very much in dispute in the state court proceedings.