778 F.2d 1447
 54 USLW 2305
 FEDERAL HOME LOAN BANK BOARD, WASHINGTON, D.C., Plaintiff-Appellee,
v.
R.Y. EMPIE, in his official capacity as Oklahoma State
Banking Commissioner, and Michael C. Turpen, in
his official capacity as Attorney
General of the State of
Oklahoma,
Defendants-
Appellants.
 No. 83-2098.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 26, 1985.
 
 Mary Beth Guard, Legal Counsel, Oklahoma State Banking Dept. (Michael C. Turpen, Atty. Gen. of Oklahoma, George R. Barr, Jr., Asst. Atty. Gen. and Frances C. Farzley, formerly Legal Counsel, State Banking Dept., on the briefs), Oklahoma City, Okl., for defendants-appellants.
 Joanne Parsons Underhill, Trial Atty. (William K. Black, Associate Gen. Counsel, Denise Z. Field, Acting Deputy Dir., Litigation Div., Norman H. Raiden, Gen. Counsel, and Ralph W. Christy, Deputy Gen. Counsel, with her on the briefs), Office of General Counsel, Federal Home Loan Bank Bd., Washington, D.C., for plaintiff-appellee.
 Laura N. Pringle, Vice President and Gen. Counsel, Oklahoma Bankers Ass'n, Oklahoma City, Okl., filed an amicus curiae brief on behalf of the Oklahoma Bankers Ass'n.
 Before LOGAN and SETH, Circuit Judges, and FINESILVER, District Judge.*
 LOGAN, Circuit Judge.
 
 
 1
 The Federal Home Loan Bank Board (Bank Board) brought this action for declaratory and injunctive relief against defendants Oklahoma Banking Commissioner and Oklahoma Attorney General. The Bank Board sought a declaration that Oklahoma officials have no authority to interfere with the Bank Board's exclusive right under federal law to regulate all aspects of the operation of federally chartered savings institutions.[1] It specifically sought an injunction forbidding Oklahoma state officials from taking any action to compel federally chartered savings institutions located in that state to comply with any Oklahoma laws or regulations relating to advertising practices, including Okla.Stat. tit. 6, Sec. 1401. That statute makes it a misdemeanor for entities, other than those conducting a banking business under the banking laws of Oklahoma, to use various forms of the word "bank" in advertising. The district court granted the Bank Board's motion for summary judgment and issued the requested declaratory judgment and injunction.
 
 
 2
 The Oklahoma officials, joined by the Oklahoma Bankers Association as amicus curiae, argue that the district court erred in the following respects: (1) it lacked subject matter jurisdiction because the federal question raised in the complaint was actually just a defense to an ongoing enforcement proceeding in Oklahoma state court against Victor Federal Savings and Loan Association; (2) if the federal district court had jurisdiction, it should have abstained from hearing the case based on the Pullman doctrine until the state court had had an opportunity to rule, or should have dismissed the case based on the Younger equitable restraint doctrine; and (3) the court incorrectly ruled that the Home Owners' Loan Act of 1933, as amended, 12 U.S.C. Secs. 1461-1468, preempts all state regulation with respect to federally chartered savings institutions, including the Oklahoma "bank" advertising statute. We reject these arguments, and affirm the decision of the district court, with one small modification.
 
 
 3
 Three other court proceedings are at least tangentially relevant to this suit. In Oklahoma Bankers Association v. Victor Federal Savings and Loan Association, No. C-83-247, a suit filed in Muskogee County District Court in Oklahoma several weeks before the instant case, the Oklahoma Bankers Association and the state banking commissioner sought to enforce Okla.Stat. tit. 6, Sec. 1401, against a federal savings and loan association that had used the word "banking" in an advertisement.[2] The Bank Board was not a party to this state court suit and contends that it could not have been compelled to become a party because federal statutes limit suits against the Bank Board to those brought in federal court, citing 12 U.S.C. Sec. 1464(d)(1) and 5 U.S.C. Sec. 702. The Bank Board apparently believes that the Victor Federal advertising does not offend Board policy.
 
 
 4
 In the second arguably related action, Oklahoma Bankers Association v. Family Federal Savings Bank, No. C-83-181, the Bankers Association brought a similar suit in the Creek County District Court in Oklahoma one week after the Bank Board filed the instant case in federal court. In addition to claiming that Family Federal was forbidden from using various forms of the word "bank," the private bankers association claimed that Oklahoma law forbade Family Federal from operating as a "Federal, mutual savings bank." R. I, 79-80. No Oklahoma state official or agency was a co-plaintiff in this suit; nor was the Bank Board a party to the suit.
 
 
 5
 The third case, Oklahoma Bankers Association v. Home Savings Bank, No. CIV-83-1729-W (W.D.Okla. June 27, 1984), originally was brought in Comanche County District Court in Oklahoma in July 1983, approximately four months after the Bank Board filed the instant suit and several weeks before the district court issued the orders that we now review. In that suit the private bankers association claimed that Home Savings' operation, as a federally chartered savings bank, violated Oklahoma law because Oklahoma law does not authorize conversion of a state-chartered institution to a federally chartered institution and forbids such a business from using the term "bank." Home Savings impleaded the Bank Board as a third-party defendant, and the Board removed the case to federal court. The federal court granted summary judgment for Home Savings and the Bank Board, relying in part on its prior order in the instant case. Apparently the Oklahoma Bankers Association has not appealed that ruling.
 
 
 6
 * Defendants first contend that the district court lacked subject matter jurisdiction because of the familiar "well-pleaded complaint" rule. They claim that the Bank Board's complaint failed to show the existence of a federal question for the following reasons: (1) the real issue in this case is the scope of the state law concerning use of the word "bank"; (2) federal preemption arises only as a defense to that state law claim; and (3) the federal claim asserted here is just a defense to the state court Victor Federal suit. They argue that the instant case is governed by the line of cases commencing with Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-74, 70 S.Ct. 876, 878-80, 94 L.Ed. 1194 (1950), and Public Service Commission v. Wycoff, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952), and recently clarified in Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).
 
 
 7
 We agree with the district court and the Bank Board that this line of cases concerning the well-pleaded complaint rule and 28 U.S.C. Sec. 1331 is inapplicable to suits in which the United States brings the action and is the real party in interest. The Constitution specifically extends the "judicial Power" to "Controversies to which the United States shall be a Party." U.S. Const. art. III, Sec. 2. This authorization is separate from the more frequently invoked diversity and federal question jurisdiction provisions applicable to suits between private parties. Congress, in turn, exercised its prerogative under Article III by enacting 28 U.S.C. Sec. 1345, conferring on the lower federal courts jurisdiction over suits in which the United States is the plaintiff. Defendants do not contend that any other federal statute restricts Sec. 1345's scope in this case.
 
 
 8
 Because of Sec. 1345, the United States as party plaintiff is not subject to the well-pleaded complaint rule, although it must still meet the usual Article III case or controversy requirements and assert actual governmental interests, rather than act as a puppet for private parties. See generally United States v. San Jacinto Tin Co., 125 U.S. 273, 286, 8 S.Ct. 850, 857, 31 L.Ed. 747 (1888) ("if there does not appear any obligation on the part of the United States to the public, or to any individual, or any interest of its own, [the United States] can no more sustain such an action than any private person could under similar circumstances."); C. Wright, A. Miller & E. Cooper, 14 Federal Practice and Procedure Sec. 3651 (1985).
 
 
 9
 Here, although defendants have not argued that the Bank Board's suit did not meet Article III case or controversy requirements,[3] they claim that the state court suit against Victor Federal is the only reason any controversy exists. They allege that the Bank Board is allied with Victor Federal and that Victor Federal is the real party in interest here. This argument understates the scope of the controversy and the Bank Board's interest in it. The Bank Board's concern with protecting its turf from inroads by state regulation is a legitimate expression of the public interest. Congress gave the Bank Board authority to enforce the statutes and regulations governing federally chartered savings institutions. See 12 U.S.C. Sec. 1464(d)(1). If a state agency or a bankers association is harassing such institutions with unwarranted suits, the Bank Board properly may be concerned that its own authority is being undermined and that all entities in its regulatory domain, as well as the general public, may suffer from the regulatory uncertainty created. Consequently we affirm the court's ruling that it had subject matter jurisdiction in the instant case. Cf. Island Airlines, Inc. v. Civil Aeronautics Board, 352 F.2d 735, 744 (9th Cir.1965) (approving of jurisdiction in a suit brought by a United States agency for declaratory and injunctive relief, even though a pending state court action between different parties raised the same issue).
 
 II
 
 10
 Defendants contend that even if the federal district court had jurisdiction it should have declined to exercise it because of either Pullman abstention or the Younger doctrine. See Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).
 
 
 11
 In the paradigmatic Pullman abstention case, the federal question is avoidable because the case presents a federal constitutional issue that might be mooted or presented in a different posture by a state court determination of pertinent state law. See Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Here, the propriety of the relief the Bank Board seeks depends on the scope of a federal statute and regulation that the district court could not avoid. Okla.Stat. tit. 6, Sec. 1401 appears to interfere with the federal regulation by sweeping broadly to prohibit use of the word "bank" by any institution lacking the state's specific authorization:
 
 
 12
 "Sec. 1401. Transaction of banking business not authorized by law--Unauthorized use of words bank, bankers, etc.
 
 
 13
 It shall be unlawful for any individual, firm, association or corporation to receive money upon deposit or transact a banking business except as authorized by the laws of this state or of the United States, or to use or advertise, in connection with any business other than the banking business, conducted under the banking laws of this state, the words: Bank, Banker, Bankers, Investment Banker, or any other word or term calculated to deceive the public into belief that such person, firm, association or corporation is engaged in the banking business...."
 
 
 14
 Even if preemption questions are constitutional issues,[4] no foreseeable state court ruling on the scope of existing state law, unconstrained by any concern with federal law, will render moot the question of federal preemption or present it in a different posture.[5] Comity concerns on permitting state courts to adjudicate questions of federal law are the basis for the Younger doctrine rather than Pullman abstention.
 
 
 15
 The district court concluded that Younger principles, forbidding federal courts to stay or enjoin state court proceedings, do not apply to an action that the United States has initiated in federal court. It relied on the holding to this effect in United States v. Composite State Board of Medical Examiners, 656 F.2d 131, 136-37 (5th Cir.1981). Defendants urge that we adopt the Sixth Circuit's contrary approach in United States v. Ohio, 614 F.2d 101, 104 (6th Cir.1979) (Younger principles applicable in suits brought by the United States), even though the Fifth Circuit expressly rejected it, 656 F.2d 135, n. 5. Cf. Colorado River Water Conservation District, 424 U.S. at 816 n. 23, 96 S.Ct. at 1246 n. 23 (finding it unnecessary to decide "when, if at all, abstention would be appropriate where the Federal Government seeks to invoke federal jurisdiction").
 
 
 16
 We need not decide whether there are ever circumstances when a federal court should dismiss on the basis of the Younger doctrine a lawsuit instigated by the United States. In the instant case the United States' interest is not sufficiently allied with Victor Federal or the other defendant savings institutions in the tangentially related state court cases for us to consider the actions related for purposes of invoking abstention under Younger. The Bank Board's concerns are much broader than those of Victor Federal or the other private parties. It is concerned with the stability and smooth operation of a nationwide network of savings institutions; Victor Federal, for example, is concerned only with the success of its campaign to advertise longer hours and drive-in teller windows.[6] Accordingly, there exists no related state court action, in the Younger sense, to which we should defer. We therefore agree with the district court's rejection of abstention and dismissal.
 
 III
 
 17
 In holding that the federal regulatory program preempts the Oklahoma statute on use of the word "bank," the district court based its decision on the then current version of 12 C.F.R. Sec. 563.27.[7] While this appeal was pending, the Bank Board published both a proposed and a final version of an amendment to this regulation. The new regulation provides:
 
 
 18
 "Sec. 563.27 Advertising.
 
 
 19
 (a) No insured institution shall use advertising (which includes print or broadcast media, displays and signs, stationery, and all other promotional materials), or make any representation which is inaccurate in any particular or which in any way misrepresents its services, contracts, investments, or financial condition.
 
 
 20
 (b) Any advertising shall specifically indicate that an insured institution is a savings institution; except that if the word 'bank' is not used in the advertising of the institution's name, the word 'savings' need not be used in such advertising. No insured institution shall advertise or hold itself out to the public as a commercial bank. Signs existing or ordered on May 4, 1984, depicting the name of the insured institution, may be used for as long as the institution chooses to continue to use the corporate title in existence on that date, and may also be used on offices established of [sic] acquired after that date for the same period. Stationery and other promotional materials on hand as of that date are exempt until such time as the insured institution needs to reorder such materials in the ordinary course of business."
 
 
 21
 49 Fed.Reg. 35,003, 35,007 (1984) (codified at 12 C.F.R. Sec. 563.27 (1985) ) (emphasis in original). The Bank Board appended to the regulation an explicit reference to 12 U.S.C. Secs. 1464, 1725, 1726 as its statutory authority for promulgating it. Id.
 
 
 22
 Amicus' contention that the Bank Board lacked authority to promulgate these changes is frivolous in light of Congress' explicit delegation:
 
 
 23
 "the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings and loan associations, or Federal savings banks...."
 
 
 24
 12 U.S.C. Sec. 1464(a); see also Fidelity Federal Savings & Loan Association v. de la Cuesta, 458 U.S. 141, 159-70, 102 S.Ct. 3014, 3025-3031, 73 L.Ed.2d 664 (1982) (discussing the broad scope of this statute's delegation). The connection between accurate advertising and Congress' goal of sound and stable operation of savings institutions is obvious.
 
 
 25
 Defendants and amicus have raised various other arguments about whether the Bank Board relied on the correct statute when it promulgated the old regulation and whether the old regulation was sufficiently explicit to create a direct conflict with the Oklahoma statute on bank advertising. The new regulation has rendered moot the first argument and weakened the second one. We consider the preemption issue only on the basis of the current regulation. Accepting the Supreme Court's broad interpretation of the enabling statute in de la Cuesta, we now analyze whether the disputed regulation directly conflicts with state law.
 
 
 26
 In the Supreme Court's recent decision on whether due-on-sale clauses are enforceable, the Court held that regulations promulgated under the same statute at issue here, 12 U.S.C. Sec. 1464(a), preempted California law forbidding enforcement of due-on-sale clauses. de la Cuesta at 159, 102 S.Ct. at 3025. The Court reviewed its previous decisions setting forth preemption principles. After describing instances in which Congress had preempted all state regulation, it said:
 
 
 27
 "Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' ... or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' ...."
 
 
 28
 Id. at 153, 102 S.Ct. at 3022 (citations omitted). As defendants here concede, federal regulations have the same preemptive effect as federal statutes. Id.
 
 
 29
 The district court found that the prior version of 12 C.F.R. Sec. 563.27, see supra note 7, preempted all state regulations over federally chartered savings and loan institutions and that any state law within this area must give way because of the Supremacy Clause. In de la Cuesta, however, the Court did not reach the question of whether the disputed regulation completely displaced state regulation of federal savings institutions, 458 U.S. at 159 n. 14, because it found an actual conflict between state and federal law. We think the same approach is appropriate here in light of the new regulation.
 
 
 30
 The Oklahoma statute makes it unlawful for any entity, unless specially authorized:
 
 
 31
 "to use or advertise, in connection with any business other than the banking business, conducted under the banking laws of this state, the words: Bank, Banker, Bankers, Investment Banker, or any other word or term calculated to deceive the public into belief that such person, firm, association or corporation is engaged in the banking business."
 
 
 32
 Okla.Stat. tit. 6, Sec. 1401. It provides that any entity violating Sec. 1401 is guilty of a misdemeanor and subject to a fine and a jail sentence of thirty days to one year. It also authorizes injunctive relief. Defendants and amicus have never contended in this suit that federal savings and loan associations and savings banks are excepted from the Oklahoma banking statute's proscription because such institutions are conducting a banking business under the banking laws of Oklahoma. Cf. Okla.Stat. tit. 18, Secs. 381.1-381.68 (special separate Oklahoma statutory framework governing savings and loan associations). Such a position would contradict both a reasonable reading of the plain language of the statute and defendants' position in the three related enforcement actions they initiated in state court.
 
 
 33
 We therefore read this Oklahoma statute as expressly forbidding something that the federal regulations expressly permit: federally chartered savings institutions' use in advertising, in at least some instances, of several forms of the word "bank." This conflict is clear from the text of the new federal regulations even without reference to their preamble or the Bank Board's "Roosevelt Federal" opinion. As noted, 12 C.F.R. Sec. 563.27(b) (1985) provides that: "Any advertising shall specifically indicate that an insured institution is a savings institution; except that if the word 'bank' is not used in the advertising of the institution's name, the word 'savings' need not be used in such advertising" (emphasis in original).
 
 
 34
 It is true that the federal regulations also forbid institutions from holding themselves out as commercial banks, see id., and that this proscription may well be consistent with the original purpose of the Oklahoma law. But in light of recent changes in federal legislation and policy, the state law directly conflicts with the federal regulation, and thus must give way because of the Constitution's Supremacy Clause. The injunction here is justified so that private parties threatened by the federal scheme will not have a colorable claim to bring vexatious lawsuits in state court.
 
 
 35
 Because we find that a direct conflict exists between state and federal law, we, like the Supreme Court in de la Cuesta, do not reach the issue of whether federal law in this area preempts the field. Given the benefit of the new regulation, we narrow the district court's order insofar as it found that federal law has occupied the field. In all other respects we affirm its judgment.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Honorable Sherman G. Finesilver, Chief Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 The complaint referred only to federal savings and loan associations, but during the proceedings the Bank Board and the court broadened the references to "federally chartered savings institutions" which would include both federal savings and loan associations and federal savings banks. See R. I, 56, 300, 312. Cf. 12 U.S.C. Sec. 1462(d) (references to Federal savings and loan associations in any federal law shall be deemed to be also a reference to Federal savings banks unless the context indicates otherwise). We consider both types of institutions to be covered by the district court's judgment in this case
 
 
 [2]
 The disputed ad included the following headline: "LONGER BANKING HOURS AT OUR SAVINGS & LOAN DRIVE-INS NOW AT VICTOR." R. I, 32. The ad included the company's full name in large print: "Victor Federal Savings & Loan." In small print it indicated:
 "Victor Federal checking accounts have been so popular that we've extended our drive-in teller hours to offer you even more convenience in banking.
 That's right, banking.
 Banking at Victor means more than just the best value in checking in town. It also means that Victor now offers commercial checking and loan services, too.
 So for the best in a complete line of personal and commercial services, there are three great places in town you can bank on for certain--the three Victor Federal offices in Muskogee."
 R. I, 32 (emphasis in original).
 
 
 [3]
 In its reply brief amicus contends that the issue is not ripe for consideration. But the argument it advances does not support this claim. It simply directs the court's attention to the Bank Board's recent revision of the regulations concerning advertising by savings institutions, published in final form at 49 Fed.Reg. 35,003-07 (1984) (codified at 12 C.F.R. Secs. 543.1, 563.27 (1985) ). See Amicus Reply Br. at 13-18. Amicus appears to argue that the Board lacks authority to revise its own regulations, that these revisions show the lack of federal regulation over federal savings institutions, and that no conflict between federal and state law exists under the new regulations or existed prior to them. It also claims that the Bank Board's "Roosevelt Federal" opinion may be inconsistent with the new regulations. None of these arguments warrant serious attention in a consideration of ripeness. We have a clear statement of the Bank Board's current view of its own regulations and interpretive opinion because it is the plaintiff in this action. We address amicus' other, somewhat inconsistent, arguments about the Bank Board's statutory authority and the extent of the conflict between state and federal law in part III, infra
 
 
 [4]
 The Supreme Court does not appear to view federal preemption questions based only on the Supremacy Clause as the type of constitutional issues that the Pullman abstention doctrine counsels courts to avoid. See Propper v. Clark, 337 U.S. 472, 489-90, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480 (1949); see also Kennecott Corp. v. Smith, 637 F.2d 181, 184-85 (3d Cir.1980); C. Wright, A. Miller, E. Cooper, 17 Federal Practice and Procedure Sec. 4242, at 454-55 (1978)
 
 
 [5]
 With a heavy dose of creativity and considerable mental gymnastics there is a slight chance that a state court could read the Oklahoma statute's ban on use of the word "bank" as not applicable to federally chartered savings institutions. This could be accomplished by ignoring a comma and an extra "to" and construing the proviso in the first clause of "except as authorized by the laws ... of the United States" as applying to the second clause dealing with improper use of forms of the word "bank." This interpretation would assume that, despite its reference to both federal and state law in the first proviso, when the Oklahoma legislature wrote "business other than the banking business, conducted under the banking laws of this state, ..." it actually meant to say "other than the banking business, conducted under the banking laws of this state or of the United States." It would also assume that the "banking laws of the United States" include the laws governing federally chartered savings institutions
 Yet even this construction could not be reached solely by reference to state law. The interpreting court would have to make some large assumptions about federal law because the phrase in the statute incorporating a reference to federal law is no more than the functional equivalent of a savings clause preserving the statute's validity in at least some circumstances when federal law permits activity that Oklahoma does not itself authorize. A state statute is not unclear simply because it contains a proviso acknowledging that it will do what the Constitution's Supremacy Clause compels it to do. The purposes of Pullman abstention are not served by dismissing a suit so that a state court may determine the extent of the federal regulatory scheme to which its own statute must give way. Cf. Chemical Specialties Mfrs Ass'n v. Lowery, 452 F.2d 431, 433 (2d Cir.1971) (abstention not appropriate when difficulties in statutory construction pertain to the relevant federal laws). Therefore, we reject any argument that the Oklahoma statute is unclear simply because it contains a reference to federal law.
 
 
 [6]
 In Younger the Court indicated that federal courts should think twice before interfering with a pending state criminal proceeding. Such concerns, however, should not cause state authorities to scour their dockets for criminal or quasi-criminal cases presenting a similar issue, every time the United States brings a civil action of statewide or nationwide importance. The only state court suit at issue here that could possibly involve criminal liability is the one against Victor Federal. It is not clear from the record whether the state there sought enforcement of Okla.Stat. tit 6, Sec. 1401's criminal sanctions. The complaint against Victor Federal asks for an injunction and "further relief as may be appropriate." The Bank Board was not a proper party to the Victor Federal case in state court. Moreover, in the ordinary criminal or quasi-criminal state case neither the United States nor its agencies will ever be proper defendants. If the Victor Federal case is a criminal proceeding, we agree with the Fifth Circuit's alternative ground in Composite State Board of Medical Examiners, 656 F.2d at 137, that the United States' interest was not sufficiently intertwined with that of the private party defendant
 
 
 [7]
 "Sec. 563.27 Advertising must be accurate
 No insured institution shall use advertising (whether printed, radio, display, or of any other nature) or make any representation which is inaccurate in any particular or which in any way misrepresents its services, contracts, investments, or financial condition."
 
 
 [12]
 C.F.R. Sec. 563.27 (1984). 12 C.F.R. Sec. 561.1 defines "insured institution" to include federal savings and loan associations and federal savings banks as well as other organizations insured by the FSLIC