**FLEET BANK, NATIONAL ASSOCIATION, Plaintiff–Appellee,**

v.

**The Honorable John P. BURKE, Banking Commissioner of the State of Connecticut, and Connecticut Department of Banking, a State Agency, Defendants–Appellants.**

**Docket No. 98–9324**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1998.

Decided Nov. 9, 1998.

**884**

Richard Blumenthal, Atty. Gen., Hartford, Conn. (William J. Prensky, Asst. Atty. Gen., Hartford, Conn., on the brief), for defendants-appellants.

Daniel L. FitzMaurice, Hartford, Conn. (Allan B. Taylor, Day, Berry & Howard, Hartford, Conn., on the brief), for plaintiff-appellee.

(Michael E. Malamut, Loretta M. Smith, Boston, Mass., submitted a brief for amicus curiae The New England Legal Foundation).

(Raymond Natter, Robert B. Serino, L. Robert Griffin, Rosa M. Koppel, F. Thomas Eck, IV, Washington, DC, submitted a brief for amicus curiae The Office of the Comptroller of the Currency).

(Donald E. Frechette, Edwards & Angell, Hartford, Conn., submitted a brief for amicus curiae First Union National Bank).

Before: NEWMAN and JACOBS, Circuit Judges and BURNS,*

JON O. NEWMAN, Circuit Judge:

This appeal concerning a preemption claim presents an issue of federal subject matter jurisdiction that appears not to have been explicitly considered by any court. The issue is whether subject matter jurisdiction under 28 U.S.C. § 1331 (1994) is available for a complaint seeking declaratory and injunctive relief against a state officer and a state agency that alleges (a) that state law does not prohibit the action the defendants assert the plaintiff may not take and (b) that state law, if construed to prohibit the plaintiff's conduct, is preempted by federal law. The issue arises on an appeal by the Connecticut Commissioner of Banking ("Commissioner") and the Connecticut Department of Banking from the October 5, 1998, judgment of the District Court for the District of Connecticut (Janet Bond Arterton, Judge) granting a declaratory judgment in favor of the plaintiff Fleet Bank, National Association ("Fleet"). The judgment declares that Connecticut's banking laws do not prohibit Fleet from imposing a fee upon non-Fleet customers for using a Fleet automated teller machine ("ATM"). We conclude that federal question jurisdiction is lacking because the lawsuit is primarily an attempt to have a federal court construe a state regulatory statute. We therefore vacate the judgment and remand with directions to dismiss the complaint.

## Background

Fleet is a national banking association organized under the National Bank Act, 12 U.S.C. §§ 21–216d (1994 & West Supp.1998) ("the Act"). The Act confers upon a national banking association the power, among other things, "[t]o exercise ... all such incidental powers as shall be necessary to carry on the business of banking." *Id.* § 24 (Seventh). In September 1995, Fleet sought an opinion from the Commissioner that the Connecticut statutes governing the use of ATMs in Connecticut do not place any restriction on the ability of a federally chartered bank to impose a fee ("the surcharge fee") for use of the bank's ATMs by a person who does not

* Honorable Ellen Bree Burns, of the United States District Court for the District of Connecticut, sitting by designation.

otherwise have a banking relationship with the bank. The Commissioner replied that Connecticut banking laws do not authorize a surcharge fee. He reasoned that the state statute, Conn. Gen.Stat. § 36a–156, authorizing banks to impose a usage fee (also called an "interchange fee") on other banks whose customers use the ATMs of so-called "host" banks (Fleet in this litigation) "carries with it an implied prohibition against the bank imposing a fee on customers of the other bank for such use." Letter from John P. Burke, Banking Commissioner, to Robert M. Taylor, III, Esq. (Sept. 14, 1995).

Fleet then brought the pending lawsuit in the District Court. Its complaint set forth two propositions of law. First, Fleet alleged that the defendants "have adopted an arbitrary, capricious, and erroneous view of the Connecticut ATM statutes insofar as they conclude that these statutes prohibit Fleet from charging fees to non-depositor customers using its ATMs." Complaint ¶ 18. Second, Fleet alleged that "the Connecticut ATM statutes are preempted by 12 U.S.C. § 24 (Seventh) to the extent that these statutes are interpreted to prohibit Fleet from, or penalize Fleet for, exercising the power to charge fees to non-depositor customers using its ATMs." Id. ¶ 19. As relief, Fleet sought a judgment declaring that the Connecticut ATM statutes did not prohibit the surcharge fee, declaring that the National Bank Act preempts Connecticut ATM statutes insofar as they are interpreted to prohibit the surcharge fee, and enjoining the defendants from interfering with Fleet's imposition of the surcharge fee.

The defendants moved to dismiss on the ground that the case was appropriate for abstention under *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The defendants pointed out that the state statute invoked by the Commissioner to support his view that the surcharge fee was prohibited had never been construed by any court, and urged that the initial construction should be made by a state court. Judge Arterton denied the motion.

She reasoned that abstention is "not appropriately invoked in a preemption case," citing *Coker v. Pan American World Airways, Inc. (In re Pan American Corp.)*, 950 F.2d 839 (2d Cir.1991), that the defendants had not made a sufficient showing that state law was unclear, and that interpretation of the Connecticut ATM statutes by a Connecticut court "will not resolve the preemption question in this case." Ruling on Defendants' Motion to Dismiss at 5, 8.

Thereafter, the parties agreed to, and the District Court approved, a bifurcation of issues. The Court's subsequent scheduling order set a date for simultaneous cross-motions for summary judgment on the state law issue, and bifurcated the preemption issue for later scheduling "if necessary." *See* Scheduling Order (Aug. 29, 1997). Upon the parties' cross-motions directed only to the state law issue, Judge Arterton ruled that Conn. Gen. Stat. § 36a–156 did not prohibit Fleet from imposing a surcharge on non-depositor customers for use of its ATMs. This Court stayed the District Court's judgment, in effect enjoining Fleet from imposing the surcharge fee, pending oral argument on the defendants' appeal, which we expedited. After oral argument, we terminated our stay, thereby permitting Fleet to impose the surcharge fee.

## Discussion

■ On appeal, the defendants challenge the District Court's subject matter jurisdiction. Though they failed to mount such a challenge in the District Court,[1] that omission is not fatal, since subject matter jurisdiction may be raised at any time, and we would be obliged to consider it, even if the defendants had not raised it. *See Wisconsin Dep't of Corrections v. Schacht*, —— U.S. ——, ——, 118 S.Ct. 2047, 2052, 141 L.Ed.2d 364 (1998). Explication of the defendants' contention and the plaintiff's response will assist an understanding of the ground on which our disposition ultimately rests.

■ The defendants contend that subject matter jurisdiction is lacking because of the

---

1. The defendants' answer asserted lack of subject matter jurisdiction as a special defense, but linked this contention to a request that the Dis-

trict Court abstain from interpreting section 36a–156. The defendants' subsequent motion to dismiss asserted only the ground of abstention.

strictures of the well-pleaded complaint rule. As the defendants correctly note, that rule requires a complaint invoking federal question jurisdiction to assert the federal question as part of the plaintiff's claim, *see Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Gully v. First National Bank,* 299 U.S. 109, 116, 57 S.Ct. 96, 81 L.Ed. 70 (1936), and precludes invoking federal question jurisdiction merely to anticipate a federal defense, *see Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908), including the defense of preemption, *see Caterpillar Inc. v. Williams,* 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Franchise Tax Board,* 463 U.S. at 14, 103 S.Ct. 2841; *Travelers Indemnity Co. v. Sarkisian,* 794 F.2d 754, 758 (2d Cir.1986).

■ As the defendants further note, also correctly, the declaratory judgment statute does not confer jurisdiction on a district court, *see Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950), and a declaratory judgment plaintiff is subject to the rule that federal jurisdiction cannot be obtained by anticipating an adversary's federal defense, *id.* Moreover, and especially pertinent to the pending suit, a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff. *See Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court."); 15 James Wm. Moore, *Moore's Federal Practice* § 103.44[1], at 103–67 (3d ed. 1998) ("[T]he nature of the potential coercive action that the defendant might bring against the declaratory judgment plaintiff must be analyzed. The court will ask whether in this hypothetical suit, a federal question would be presented.") (footnote omitted).

Thus, the argument continues, Fleet's lawsuit seeking the declaratory relief of insulation from the Commissioner's threat to invoke section 36a–156 to prohibit Fleet's imposition of the surcharge should be viewed as if the Commissioner were suing Fleet; in that event, Fleet would be asserting not only its state law defense that section 36a–156 does not prohibit the surcharge fee but also, if the state law defense failed, its federal law defense of preemption. But under the well-pleaded complaint rule, the argument continues, the defensive nature of this preemption contention would not suffice to invoke federal subject matter jurisdiction, at least in the absence of a preemption claim based on a federal law that "so completely pre-empt[s] a particular area that any civil complaint ... is necessarily federal in character." *Metropolitan Life,* 481 U.S. at 63–64, 107 S.Ct. 1542.

■ This "complete preemption" exception to the well-pleaded complaint rule (or what the *Moore* treatise prefers to call "jurisdictional preemption," 15 *Moore's Federal Practice* § 103.45[1], at 103–78), permitting a plaintiff to invoke federal subject matter jurisdiction to obtain a declaratory judgment that a state law requirement or prohibition is preempted, notwithstanding the defensive nature of the preemption contention, has thus far been recognized only in three contexts. These are cases asserting preemption by virtue of (1) the Labor Management Relations Act, 29 U.S.C. §§ 141–87, *see Avco Corp. v. International Association of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), (2) the civil enforcement provision of the Employees Retirement Income Security Act ("ERISA"), ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), *see Metropolitan Life,* 481 U.S. at 65–67, 107 S.Ct. 1542, and (3) some laws covering Indian tribal claims, *see Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–70, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974); *see also* 13 Charles Alan Wright *et al., Federal Practice & Procedure* § 3522 (2d ed. Supp.1998)

("complete preemption" doctrine applied narrowly). However, the National Bank Act, whatever its preemptive effect, does not accomplish "complete preemption." *See, e.g., Downriver Community Federal Credit Union v. Penn Square Bank*, 879 F.2d 754, 758–59 (10th Cir.1989) (state law authority governs contracts of national banks unless it "expressly conflicts" with federal banking laws) (quoting *Davis v. Elmira Savings Bank*, 161 U.S. 275, 283, 16 S.Ct. 502, 40 L.Ed. 700 (1896)).[2] The defendants therefore resist Fleet's suit by contending that, absent "complete preemption," federal subject matter jurisdiction is lacking for a declaratory judgment action that anticipates a federal preemption defense to a threatened state law enforcement action.

If Fleet's complaint sought only a declaratory judgment, the defendants' jurisdictional challenge would appear to be entirely correct, subject only to an uncertainty we consider below. However, the complaint also seeks an injunction to prohibit the Commissioner from applying section 36a–156 to prohibit Fleet's imposition of the surcharge fee. Fleet contends that its request for an injunction brings it within the scope of *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), in which the Supreme Court sustained federal court jurisdiction over a lawsuit seeking both declaratory and injunctive relief to prevent enforcement of a provision of New York's Human Rights Law, N.Y. Exec. Law §§ 290–301 (McKinney 1982 & Supp.1982–83), on the ground that the state law was preempted by ERISA. The defendants respond that *Shaw* is an ERISA case and is to be distinguished from the pending case because Fleet's preemption contention does not invoke a federal law that accomplishes "complete preemption," whatever its specific preemptive effect on section 36a–156 might be.

Initially, we note that it is not as clear as the defendants contend that *Shaw* is an instance of "complete preemption." ERISA claims are completely preempted when the plaintiff's state law claim for benefits is "displaced by ERISA's civil enforcement provision." *Metropolitan Life*, 481 U.S. at 60, 107 S.Ct. 1542. Unlike *Metropolitan Life*, *Shaw* was not a removed state court suit by an employee seeking benefits; it was litigation initiated by employers and their insurer against the New York State Division of Human Rights and the Division's Commissioner and General Counsel.[3] *See Shaw*, 463 U.S. at 92 & n. 7, 103 S.Ct. 2890. The plaintiffs sought to prevent the state agency from requiring them to alter their employee benefit plans to include disability benefits due to pregnancy. *See Delta Air Lines, Inc. v. Kramarsky*, 650 F.2d 1287, 1290 (2d Cir.), *modified*, 666 F.2d 21 (2d Cir.1981), *aff'd in part, vacated in part*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). Though the litigation might arguably have been regarded as a suit anticipating an eventual claim by a pregnant female employee for benefits required to be provided by state law, there is no indication that the parties advanced this view, and no such plaintiff was party to the suit. In fact, in the District Court the only employees whose rights were invoked were those of the employers' male employees, on whose behalf the employers sought to assert the right to be free of what was alleged to be the discriminatory effect of the state law requirement. *See Delta Air Lines, Inc. v. Kramarsky*, 485 F.Supp. 300, 303 (S.D.N.Y. 1980). Most significantly, the Supreme Court's opinion, particularly its discussion of subject matter jurisdiction, made no reference to the "complete preemption" doctrine.

On the contrary, the Supreme Court explicitly upheld subject matter jurisdiction in

2. Although no court has held that the National Bank Act preempts all state regulation of federally chartered banks, at least one court has held that the Act completely preempts state law usury claims against such banks. *See M. Nahas & Co. v. First National Bank*, 930 F.2d 608 (8th Cir. 1991).

3. The employers also sought relief against the State Workmen's Compensation Board and its chairman, arguing that ERISA preempted the State's Disability Benefits Law, N.Y. Work. Comp. Law §§ 200–242 (McKinney 1965 & Supp.1982–83). The Supreme Court held that ERISA did not preempt the disability statute. *See Shaw*, 463 U.S. at 106–08, 103 S.Ct. 2890.

*Shaw* on an entirely different basis—the fact that the plaintiffs were seeking *injunctive* relief to prevent state officials from interfering with a federal right:

It is beyond dispute that federal courts have jurisdiction over suits to *enjoin* state officials from interfering with federal rights. See *Ex parte Young*, 209 U.S. 123, 160–62, 28 S.Ct. 441, 52 L.Ed. 714 (1908). A plaintiff who seeks *injunctive* relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve. See *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–200, 41 S.Ct. 243, 65 L.Ed. 577 (1921); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908); see also *Franchise Tax Board [v. Construction Laborers Vacation Trust*, 463 U.S. 1], at 19–22, and n. 20, 103 S.Ct. 2841, 77 L.Ed.2d 420 [1983]; Note, Federal Jurisdiction over Declaratory Suits Challenging State Action, 79 Colum. L.Rev. 983, 996–1000 (1979). This Court, of course, frequently has resolved pre-emption disputes in a similar jurisdictional posture. See, *e.g., Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Shaw*, 463 U.S. at 96 n. 14, 103 S.Ct. 2890 (emphases added).

This explication of subject matter jurisdiction, with its pointed reliance on a plaintiff's seeking injunctive relief, appears to create a sharp distinction between preemption claims asserted in complaints seeking only a declaratory judgment, for which *Caterpillar* and *Wycoff* indicate that federal court jurisdiction

would be lacking under the well-pleaded complaint rule, and preemption claims asserted in complaints seeking an injunction.[4] Moreover, the same day the Court decided *Shaw*, it also decided *Franchise Tax Board*. In the latter case, the Court noted with apparent approval cases upholding federal jurisdiction where a plaintiff seeks to enjoin application of allegedly preempted state regulations and stated that "a declaratory judgment action *by the same person* does not necessarily run afoul of the *Skelly Oil* doctrine." *Franchise Tax Board*, 463 U.S. at 20 n. 20, 103 S.Ct. 2841 (emphasis added) (citing *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506–08, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972), *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1303–06 (9th Cir.1975), *aff'd sub nom. Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), and *First Federal Savings & Loan Ass'n v. Greenwald*, 591 F.2d 417, 423 & n. 8 (1st Cir.1979)). The implication seems to be that jurisdiction exists if "the same person" seeking a declaratory judgment also seeks an injunction.

However, after *Shaw* and *Franchise Tax Board*, the Supreme Court has given some indication that a declaratory judgment plaintiff may invoke federal jurisdiction to assert insulation from preempted state laws, even without seeking an injunction. In *Lawrence County v. Lead–Deadwood School District No. 40–1*, 469 U.S. 256, 105 S.Ct. 695, 83 L.Ed.2d 635 (1985), the Court considered a case that had originally been brought in a federal court, seeking a declaratory judgment that a state law conflicted with a federal law. The District Court had granted the declaratory judgment, but the Court of Appeals had reversed for lack of jurisdiction, relying on *Wycoff*. See *Lawrence County v. South Dakota*, 668 F.2d 27, 31 (8th Cir.1982). The unsuccessful federal court plaintiff then sued in state court, and the Supreme Court reviewed the merits of the Supremacy Clause claim on an appeal from the South Dakota Supreme Court. In a footnote significant to

---

4. The tension between the bar to anticipating federal defenses, exemplified by the language in *Caterpillar* and *Wycoff*, and the allowance of jurisdiction over claims for injunctive relief, as in *Shaw*, has been noted. See *Playboy Enterprises, Inc. v. Public Service Commission*, 906 F.2d 25, 29–31 (1st Cir.1990); Henry Paul Monaghan, *Federal Statutory Review under Section 1983 and the APA*, 91 Colum. L.Rev. 233, 238–39 (1991).

our litigation, the Court observed that the Eighth Circuit's dismissal had been erroneous. The Court explained why in this somewhat perplexing language:

> This [dismissal] ruling was erroneous. In *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), we granted *declaratory* relief to a party challenging a state statute on pre-emption grounds, reaffirming the general rule that "[a] plaintiff who seeks *injunctive* relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.* at 96 n. 14, 103 S.Ct. 2890.

*Lawrence County*, 469 U.S. at 259 n. 6, 105 S.Ct. 695 (emphases added) (second brackets in original). Possibly, this language was intended only to echo the point made in *Franchise Tax Board* that a declaratory judgment may be given in a suit by the "same person" who also seeks an injunction on preemption grounds, yet the Eighth Circuit dismissal that the Supreme Court called erroneous occurred in a suit seeking only a declaratory judgment. The force of whatever meaning is to be drawn from the *Lawrence County* footnote is diminished by the fact that the footnote is dictum, since the Eighth Circuit's rejection of jurisdiction was irrelevant to the Supreme Court's later consideration of the appeal from the South Dakota Supreme Court.

Also clouding the matter is the Supreme Court's view of *Wycoff* as a case that held jurisdiction lacking because the controversy was not ripe, thus leaving in doubt the continued significance of the language in *Wycoff* invoking the well-pleaded complaint rule. *See Lake Carriers'*, 406 U.S. at 508 n. 12, 92 S.Ct. 1749 ("*Wycoff Co.* was a case 'where a carrier sought relief in a federal court against a state commission in order "to guard against the possibility," [344 U.S.], at 244, 73 S.Ct. 236, that the Commission would assume jurisdiction.'") (quoting *Public Utilities Commission v. United States*, 355 U.S. 534, 538–39, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958)).

Whether or not the Supreme Court would now uphold federal court jurisdiction over a complaint alleging preemption and seeking only a declaratory judgment, Fleet's suit is arguably within the line of cases illustrated by *Shaw* and the cases cited in the *Shaw* footnote because Fleet seeks an injunction. Nevertheless, we think Fleet's suit is distinguishable from *Shaw* and from the decisions it relies upon in a significant respect.

In *Shaw* and in all four of the preemption cases cited in the *Shaw* footnote in which plaintiffs sought injunctive relief against state officials to prevent enforcement of state laws alleged to be preempted, *Ray, Jones, Florida Lime & Avocado Growers*, and *Hines*, the plaintiffs acknowledged that the state law regulated them in the manner that the state officials were asserting. No issue was raised concerning the interpretation of state law.[5] By contrast, Fleet enters the District Court to obtain an interpretation that the relevant state law, § 36a–156, does not, *as a matter of state law*, prevent its imposition of the surcharge fee. Only if Fleet loses on this state law ground does it need to advance the contention that the state statute is preempted. Thus, the issue in this case is whether a plaintiff that disputes a state official's interpretation of state law can invoke federal question jurisdiction to seek a favorable construction of state law and, if unsuccessful in that effort, an injunction barring enforcement of the state law on the ground of preemption. We have found no decision explicitly considering this issue.

The context in which this issue arises bears some resemblance to the typical situation in which a plaintiff invokes federal court jurisdiction to enjoin enforcement of a state

---

5. In some cases properly invoking federal jurisdiction to consider preemption claims, state law must be examined by the federal court, not to determine whether it applies to the plaintiff, but to determine whether the nature of the interest regulated by state law is preempted by federal law. *See, e.g., Barnett Bank v. Gallagher*, 43 F.3d 631, 634–36 (11th Cir.1995) (state law examined to determine whether it is a regulation of insurance protected from federal regulation by the McCarran–Ferguson Act, 15 U.S.C. § 1012(b) (1994)), *rev'd on other grounds*, 517 U.S. 25, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996).

law alleged to violate one of the Constitution's limitations to which the state is subject by virtue of the Fourteenth Amendment, and the federal court considers whether the state statute is subject to a limiting interpretation that avoids the constitutional issue. In that context, the federal court unquestionably has jurisdiction, notwithstanding the doubt concerning the meaning of state law, and the federal court sometimes construes the state law, *see, e.g., Bad Frog Brewery v. New York State Liquor Authority,* 134 F.3d 87 (2d Cir. 1998), and sometimes abstains pending state court interpretation, *see, e.g., Lake Carriers',* 406 U.S. at 509–13, 92 S.Ct. 1749; *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Even when it abstains, however, the federal court need not relinquish jurisdiction but may stay the federal case pending state court construction of the state statute, *see, e.g., Confederated Salish v. Simonich,* 29 F.3d 1398, 1407 (9th Cir.1994), with the plaintiff free to return to federal court to pursue the constitutional issue if it has been specifically reserved from state court adjudication, *see England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 421, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

However, preemption claims, though implicating the Supremacy Clause, have been recognized as presenting a constitutional issue of a lesser magnitude than suits challenging the authority of state officials on the ground that their actions will violate the substantive limitations of the Constitution. On this rationale, the Supreme Court ruled that a preemption claim, though resting on the Supremacy Clause, did not require the convening of the former statutory three-judge district court, *see* 28 U.S.C. § 2281 (1948) (repealed 1976), as was required for claims that allege "the traditional Due Process Clause, Equal Protection Clause, Commerce Clause, or Contract Clause arguments." *Swift & Co. v. Wickham,* 382 U.S. 111, 120, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Moreover, some of the courts that have considered abstention inappropriate in preemption cases have pointed out that preemption claims under the Supremacy Clause do not present "substantial" constitutional issues. *See, e.g., United Services Automobile Ass'n v. Muir,* 792 F.2d 356, 364 (3d Cir.1986); *Federal Home Loan Bank Board v. Empie,* 778 F.2d 1447, 1451 n. 4 (10th Cir.1985) (preemption questions based only on the Supremacy Clause considered not to be "the type of constitutional issues" warranting *Pullman* abstention); *Knudsen Corp. v. Nevada State Dairy Commission,* 676 F.2d 374, 377 (9th Cir.1982) ("[n]o constitutional issues of substance" presented by preemption claim).

Though these court of appeals decisions somewhat downgrade constitutional issues arising under the Supremacy Clause, their refusal to permit *Pullman* abstention arguably offers support for Fleet's claim that subject matter jurisdiction exists. However, in nearly all of the cases rejecting abstention in preemption cases, the state law was clear, and preemption was rejected because the plaintiff was entitled to submit its unavoidable preemption claim to a federal forum. *See, e.g., Federal Home Loan Bank Board,* 778 F.2d at 1451 (no issue raised as to meaning of state law); *Kennecott Corp. v. Smith,* 637 F.2d 181, 185 (3d Cir.1980) (same); *Chemical Specialties Manufacturers Ass'n v. Lowery,* 452 F.2d 431, 433 (2d Cir.1971) (same); *see also Coker,* 950 F.2d at 847 (same) (bankruptcy jurisdiction); *cf. Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323 (2d Cir.1982) (abstention under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), rejected where meaning of state law not disputed), *aff'd sub nom., Arcudi v. Stone & Webster Engineering Corp.,* 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983); *Marshall v. Chase Manhattan Bank (National Ass'n),* 558 F.2d 680, 683–84 (2d Cir.1977) (same). The absence of uncertainty concerning the meaning of state law was emphasized by Judge Friendly in rejecting a claim that a district court should have abstained in a suit claiming conflict between state and federal law. *See Chemical Specialties,* 452 F.2d at 433. In a rare instance where a court accepted subject matter jurisdiction in a preemption case despite uncertainty as to the meaning of state law, subject matter jurisdiction appears not to have been considered. *See Association of International Automobile Manufacturers,*

*Inc. v. Abrams*, 84 F.3d 602, 609–11 (2d Cir.1996).

Thus we must consider whether the uncertainty of state law in a preemption case defeats federal court jurisdiction, which would otherwise exist under *Shaw* because Fleet's complaint requests an injunction (and perhaps even if only a declaratory judgment had been sought). Several considerations persuade us that *Shaw* should be distinguished on this ground, with the result that subject matter jurisdiction is rejected. First, *Shaw* itself stands as something of an exception to the well-pleaded complaint rule that normally prevents a plaintiff, at least in declaratory judgment suits, from invoking federal court jurisdiction to anticipate its own federal defense to an apprehended enforcement action by state officials. It is one thing for the injunction request to trump the well-pleaded complaint rule in cases where the plaintiff does not dispute the application of the allegedly preempted state law; it is quite a different thing when the plaintiff comes to federal court requesting that court to construe state law to be inapplicable, and asserts federal preemption as a contention in reserve for use only if the initial claim is rejected.

Second, recognizing federal court jurisdiction over preemption claims involving state laws of uncertain meaning will propel federal courts into consideration of at least three threshold issues before they ever reach the potential preemption issue. The federal court would have to consider whether the state law is unclear in its application to the plaintiff; then the court would have to consider whether any uncertainty alleged by the plaintiff makes the case appropriate for *Pull-*

*man* abstention (an issue not arising where the applicability of state law is not disputed); if not, the court would then have to construe the state statute. In some cases, the federal court would also have to decide whether federal court construction of the state statute will so interfere with the state's enforcement of an administrative scheme as to warrant abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). All of these issues are avoided if the plaintiff is obliged either to proceed in state court to litigate its claim that state law does not mean what the state official says it means or to forgo its state law contention and litigate only its preemption claim (seeking not only a declaratory judgment but also an injunction that might be necessary in order to invoke *Shaw* ).

Third, proceeding in federal court in a suit such as this potentially raises Eleventh Amendment concerns in light of the Supreme Court's decision in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *Pennhurst* made clear that the Eleventh Amendment prevents a federal court from granting injunctive relief against a state official *on the basis of state law.* Thus, if a federal court were to construe state law in favor of a plaintiff challenging the application of state law, the court could not enforce that judgment by issuing an injunction. Though that consequence does not disable a federal court from adjudicating a state law issue, which if resolved in favor of the plaintiff would avoid a constitutional issue, it weighs against expanding *Shaw* to make further inroads on the well-pleaded complaint rule in suits involving uncertain state law.[6]

6. We do not mean to suggest that *Pennhurst*'s denial of subject matter jurisdiction over a pendent state law claim against a state official itself establishes a bar to subject matter jurisdiction in this case. In *Pennhurst*, the state law claim was an alternative basis for affording the plaintiffs relief, paralleling, yet existing distinct from, their federal constitutional claim. *Cf. Schacht*, 118 S.Ct. at 2052–53 (Eleventh Amendment defense to separate claim does not bar federal jurisdiction over distinct claims). In our case, the state law claim, though entitling the plaintiff to declaratory relief if its claim on the merits is upheld, is not entirely distinct from the federal preemption claim. Instead, in reality it presents an independent issue preliminary to the federal claim. A state law issue that is preliminary to a federal claim against a state official is not a pendent state law claim that *Pennhurst* prevents a federal court from adjudicating. *See Propper v. Clark*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949) (state law issue concerning title antecedent to federal claim concerning authority of federal Alien Property Custodian). We invoke *Pennhurst* only to indicate that its bar to injunctive relief on state law grounds weighs against entertaining a declaratory judgment claim involving unsettled state law.

Even if *Pennhurst* should be understood to bar a federal court from adjudicating, against a state, a state law issue that is preliminary to a preemp-

Finally, we have serious concerns that opening the federal courts to preemption claims by plaintiffs raising disputes about the meaning and application of state law risks a major and unwarranted incursion on the authority of state courts to construe state statutes. In almost every area in which state law regulates private conduct, some federal statute can arguably be invoked by the private party to provide the basis for a preemption claim. Sometimes the preemption claim will be so attenuated as not to present a substantial federal question warranting federal question jurisdiction. But in many cases, if subject matter jurisdiction is accepted, a colorable preemption claim would oblige the federal court to determine, *as a matter of state law,* the authority of state officials to act. Even if the preemption claim is insubstantial, some federal courts might be tempted to proceed directly to the state law issue in order to avoid exploring an often complex federal regulatory scheme. The result would be an open invitation to parties disputing a state's claim as to the meaning of state law to have a federal court determine the issue. That is an ill-advised use of federal question jurisdiction.

Rejection of federal question jurisdiction for preemption claims where the plaintiff disputes the meaning and application of state law is especially appropriate in a case such as the one now pending because the defendants are an official and an agency of a state. In *Franchise Tax Board,* the Supreme Court rejected federal jurisdiction primarily on the ground that the state agency, suing to collect taxes in that litigation, should be free to proceed *in state court* to vindicate its asserted state interest, leaving the putative state court defendant free to assert its preemption claim as a defense to a state court action.[7] *See Franchise Tax Board,* 463 U.S. at 21, 103 S.Ct. 2841. Fleet's suit not only seeks to litigate the meaning of state law and, only if unsuccessful, a preemption claim, but it also amounts to a preemptive strike, obliging the state defendants to pursue their state law claim in federal court, instead of the state court forum they might prefer. On this issue, the Supreme Court's words in *Wycoff* are especially pertinent:

> State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State.

*Wycoff,* 344 U.S. at 247, 73 S.Ct. 236. Though Fleet, like any plaintiff, may invoke federal question jurisdiction to adjudicate an unadorned claim of federal preemption, at least in a suit seeking an injunction and possibly only a declaratory judgment, it should not be accorded the opportunity to use a preemption claim as a way to force a state to adjudicate in a federal court the meaning of a state regulatory statute.

It is arguable that where a plaintiff seeking an injunction on the ground of preemption also disputes the meaning and application of state law, a federal court should accept subject matter jurisdiction and then consider on its own motion whether the uncertain nature of state law warrants abstention, or perhaps certification. We reject that course because it would expand *Shaw* to uphold jurisdiction beyond instances where the meaning of state law is undisputed, it would make an additional inroad on the well-pleaded complaint rule, and it would needlessly oblige a federal court to grapple with the often subtle issue of *Pullman* abstention.

tion claim, the Eleventh Amendment would not be an independent reason for dismissing Fleet's suit. Though the Amendment may be raised as a defense either in the trial court or on appeal, *see Edelman v. Jordan,* 415 U.S. 651, 678, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (citing *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 466–67, 65 S.Ct. 347, 89 L.Ed. 389 (1945)), the defendants have not done so in this litigation.

7. In *Franchise Tax Board,* the putative state court defendant might have been able to invoke federal court jurisdiction under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), but such an action would have had to satisfy the requirements of the Tax Injunction Act, 28 U.S.C. § 1341. *See Franchise Tax Board,* 463 U.S. at 19–20 & n. 21, 103 S.Ct. 2841.

All of these considerations persuade us that *Shaw* does not extend beyond instances where the plaintiff, seeking an injunction on the ground of preemption, does not dispute the meaning and application of state law.[8] By rejecting subject matter jurisdiction, we leave plaintiffs like Fleet on notice that if they dispute the meaning of state law in preemption cases, they should proceed initially and promptly to state court for an authoritative construction of state law.[9]

Though it is possible that the Supreme Court, when it one day confronts the precise jurisdictional issue posed by this case, will inform us that the *Shaw* footnote authorizes federal court jurisdiction for suits to enjoin state officers from enforcing allegedly preempted statutes not only when the meaning of those statutes is undisputed but also when the meaning is disputed, we conclude that the policy behind the well-pleaded complaint rule and the risk of routinely opening the federal courts to suits seeking interpretation of state laws preclude sustaining jurisdiction in this case.

Since a plaintiff asserting federal preemption of an indisputably applicable state statute has a clear right to obtain a federal court resolution of its preemption claim, *see Concerned Citizens v. New York State Dep't of Environmental Conservation*, 127 F.3d 201, 206 (2d Cir.1997), we believe that a plaintiff left to state court because its preemption claim might be mooted by a state law construction in its favor should be entitled, if it wishes, to reserve the preemption issue from state court adjudication, and come to federal court in the event that the state court construes state law adversely to it. That is the procedure recognized by the Supreme Court when a federal court abstains under *Pullman*, *see England*, 375 U.S. at 421, 84 S.Ct. 461, and it is equally applicable in this case.

## Conclusion

We therefore vacate the judgment of the District Court and remand with directions to dismiss the complaint, without prejudice, for lack of subject matter jurisdiction. No costs. The mandate shall issue forthwith.

---

8. We have no occasion to consider a situation where the plaintiff makes solely a preemption claim, and the federal court, on its own motion, raises an issue as to the meaning and application of state law. Fleet's complaint explicitly asserts that state law, properly construed, does not bar the surcharge fee.

9. Since we conclude that the District Court lacks subject matter jurisdiction, we have no occasion to consider the defendants' argument that the state law question should have been certified to the Connecticut Supreme Court.